James DiGiulio, Esq.
O'Toole Scrivo, LLC
14 Village Park Road
Cedar Grove, New Jersey 07009
(973) 239-5700
jdigiulio@oslaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW RICHARDS, and MARS MEDIA, LLC, a New Jersey limited liability company,<br><br>         Plaintiffs,<br><br>   v.<br><br>NIK LAMAS-RICHIE, RICHIE MEDIA CORPORATION, a Delaware corporation, and<br>RELIC AGENCY, INC., a California corporation,<br><br>         Defendants. | Civil Action No:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Matthew Richards, individually ("Richards"), and Mars Media, LLC ("Mars Media"), as and for their complaint against Nik Lamas-Richie ("Richie"), Richie Media Corporation ("Richie Media"), and Relic Agency, Inc. ("Relic" and collectively, with Richie and Richie Media, "Defendants") allege as follows:

**THE PARTIES**

1.   Richards is a New Jersey resident and the sole owner of Mars Media.

1

2. Mars Media is a New Jersey limited liability company with a principal place of business located at 234 Virginia Street, Westfield, New Jersey 07090.

3. Mars Media is in the business of internet marketing consulting.

4. Richie is a California resident and the sole owner of Richie Media and Relic.

5. Richie Media is a Delaware corporation with a principal place of business located at 620 Newport Center Drive, Newport Beach, California 92660.

6. Relic is a California corporation with a principal place of business located at 620 Newport Center Drive, Newport Beach, California 92660.

7. Richie Media and Relic are also internet marketing consultants that previously provided similar services to those offered by Mars Media.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

**FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF**

**A.    Richards' Consultancy With Defendants & The Agreement**

10.    Beginning in or about 2017, Richards was a consultant for Relic, holding no ownership or employment.

11.    Relic provided internet marketing consultancy to celebrities and high-profile individuals to enhance their social media and internet presence ("Services").

12.    In exchange for his consulting services, Richards was paid a portion of Relic's net profits on a monthly basis.

13.    To date, Richards is still owed approximately $90,000, which represents amounts due and owing for work performed in October and December 2021 ("Outstanding Compensation").

14.    In addition, during his time providing services to Relic, Richards loaned funds to Richie, personally, in excess of $30,000, for which the outstanding amount due is approximately $20,000 ("Outstanding Loan Amount").

15.    At the end of 2021, Richie became hostile and was refusing to pay Richards for the Outstanding Loan Amount and Outstanding Compensation, and also refusing to pay clients and other consultants.

16.    In order to resolve the dispute, it was agreed that Richie would cease providing Services, including through Relic, Richie Media, or any other company.

17.    Instead, Richards would start Mars Media to provide

3

Services to Relic clients and others.

18. In exchange, Richie agreed to act as a consultant to Mars Media for one year to help encourage and solicit Relic clients to join Mars Media and for similar compensation to that paid to Richards by Relic, i.e., half of the "net profits" of Mars Media.

19. However, it was agreed that before Richie was paid any compensation from Mars Media, Richards would be re-paid, in full, for the Outstanding Loan Amount and Outstanding Compensation.

20. On December 8, 2021, Plaintiffs and Defendants entered into an agreement (the "Agreement") memorializing these terms.

21. The Agreement provides that Richie will be a consultant to Mars Media for a term of one year, ending on December 31, 2022, unless sooner terminated in accordance with the Agreement.

22. The Agreement then details the compensation of Richie, which is 50% of Net Profits, as defined therein.

23. Section 2.3 states that Mars Media shall have the right to withhold compensation payments to Richie until such time as the Outstanding Compensation is fully repaid.

24. In addition, Section 3 states that Richie will repay Richards the Outstanding Loan Amount by no later than April 15, 2022, and if Richie breaches this term, Mars Media is permitted

to withhold Richie's compensation to re-pay Richards.

25. Defendants agreed that as of January 1, 2022, they would cease in any business operations and transition, including Services, would not compete with Mars Media, and any clients were free to work with Mars Media.

26. Defendants also agreed to express and reasonable restrictive covenants, including an agreement not to:

    (i) Engage in any Competing Business;

    (ii) Solicit Mars Media employees, consultants, or vendors;

    (iii) Solicit or attempt to solicit any customer, client, or suppliers of Mars Media; or

    (iv) Accept requests for the provision of Services otherwise offered by the Company.

27. Defendants further agreed that Plaintiffs were free to enter into contracts with Defendants' clients, and Defendants waived all claims related thereto.

28. Section 6.3 of the Agreement states that if Defendants do not cease operations, including providing Services, by January 1, 2022, Plaintiffs may terminate the Agreement, for cause, and Plaintiffs would be permitted to seek repayment of the Outstanding Loan Amount and Outstanding Compensation directly from Defendants rather than await repayment through the set-off rights.

29. Moreover, upon termination of the Agreement,

Defendants' rights to any compensation or other amounts would be immediately terminated.

30. Section 8 provides a general release of claims by Defendants against Plaintiffs, and in Section 7, Defendants represented and warranted they had no existing or contemplated causes of action against Plaintiffs.

31. The Agreement also provides, inter alia, the following:

    (i)    It shall be governed by and construed in accordance with the laws of the State of New Jersey;

    (ii)    The parties agree that any and all claims related to the Agreement shall be filed "exclusively" in the United States District Court for the District of New Jersey, Newark Vicinage or the Superior Court of New Jersey, Union County; and

    (iii)    The parties submit to the exclusive jurisdiction of the state and federal courts of New Jersey and waive any claims related thereto or any defense of an inconvenient forum.

**B.**    **The Formation of Mars Media and Richie's Various Breaches**

32. In reliance on the Agreement, Richards formed Mars Media and took steps to commence operations by January 1, 2022.

33. Unfortunately, even prior to January 1, 2022, it became clear that Defendants had no intention of abiding by the Agreement.

34. In December 2021 and again in January 2022, Relic was

paid a substantial sum for Services rendered.

35. Relic was required to remit payment of these amounts to clients and consultants, respectively, leaving the net amount for Relic.

36. However, Richie initially refused to pay clients and consultants, including Richards.

37. Even worse, Richie directed these clients and consultants to collect from Richards while Richie held onto the amounts paid so he could use them for his personal benefit.

38. In addition, Richie began to expressly solicit clients and vendors of Mars Media, promising to provide Services and compete against Mars Media.

39. As a result of Richie's comments, clients were reluctant to join Mars Media.

40. In just one example, a former Relic client stated that she wanted to cease doing business with Plaintiffs, without further explanation. It was later revealed that Richie promised to provide Services to the client, in violation of the Agreement.

41. Ultimately, Richie could not deliver on his promises.

42. Richie also demanded to review the books and records of Mars Media, a company he does not own, on a weekly basis, for no legitimate reason and caused significant disruption in the operations and transition of business to Mars Media.

7

43. Thereafter, Richie cut off all communication with Richards and walked away from his consultancy position.

44. As a result of Defendants' conduct during all pertinent times, they clearly breached the Agreement in a number of ways, including but not limited to the following:

   (i) Continued operations after January 1, 2022;

   (ii) Soliciting Mars Media clients and suppliers;

   (iii) Stating to third parties that Plaintiffs owed them money that was owed by Defendants;

   (iv) Ceased communicating with Richards;

   (v) Disparaging Plaintiffs; and

   (vi) Failing to disclose pertinent covenants to third parties.

45. Moreover, despite several promises, Richie failed to make any repayment to Plaintiffs for acknowledged amounts owed.

46. On January 21, 2022, in light of Defendant's numerous breaches, Plaintiffs, through counsel, terminated the Agreement.

47. At that point Richie had provided no Services to Mars Media and was therefore owed no funds under the Agreement.

**C.   Richie's Post-Termination Threats and Continued Breaches**

48. After the termination Richie became even more hostile, making threats to Richards and his family and directly disparaging Richards in front of vendors and clients.

49. For instance, on February 2, 2022, Richie wrote an

8

ominous and threatening message to Richards' spouse:

> Wow. All I ask for was reporting and now your husband ruined your lives.
>
> Shady family 🐍
>
> Be ready for a lot of sleepless nights. It's game on.

50. True to his threat of ruining Richards' and his family's lives, Richie contacted the employer of Richards' spouse and made disparaging and slanderous statements that Richie knew to be baseless and false all with the malicious intention of harming Richards and having his spouse terminated.

51. Richie's harassment continued with communications with Richards' family and friends and disparaging comments to colleagues and clients.

52. The threats became so serious that Richards felt it necessary to contact law enforcement to ensure the well-being of his family.

53. Realizing his threats and extortion would not materialize into further payments, Richie continued to violate the terms of the Agreement, now blatantly competing directly with Mars Media.

54. For instance, on at least February 21, 22, 23, 24 and 25, 2022, Richie and/or his company prepared posts and had them

9

published on the social media accounts of client J.E., who is actively working with Mars Media for the exact same Services.

55. More recently, Richie has simply copied Mars Media's content for his personal benefit.

56. Then on February 24, 2022, Richards received notice from another client that Richie also failed to pay him for services rendered prior to January 1, 2022. In similar instances, Richards was forced to pay Richie's clients from his own funds to continue their business relationships.

57. These actions directly took revenue from Mars Media, caused Mars Media to lose business, and were in direct contravention of the express terms and covenants of the Agreement.

## FIRST CLAIM FOR RELIEF

**(Account Stated Against Relic and Richie)**

58. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

59. Richards provided services to Relic and Richie in October and December 2021, for which he was to be compensated approximately $90,000.

60. In addition, Richards provided Richie with a personal loan for which approximately $20,000 is outstanding.

61. Defendants have acknowledged on numerous occasions

that these amounts are due and owing.

62. Despite numerous demands for repayment of these amounts, Defendants have refused to do so.

63. Accordingly, Plaintiffs are entitled to judgment in their favor for the entire amount owed.

## SECOND CLAIM FOR RELIEF

### (Book Account Against Relic and Richie)

64. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

65. Richards provided services to Relic and Richie in October and December 2021, for which he was to be compensated totaling approximately $90,000.

66. In addition, Richards provided Richie with a personal loan for which approximately $20,000 is outstanding.

67. Defendants have acknowledged on numerous occasions that these amounts are due and owing.

68. Despite numerous demands for repayment of these amounts, Defendants have refused to do so.

69. Accordingly, Plaintiffs are entitled to judgment in their favor for the entire amount owed.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract Against Defendants)

70. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

71. Plaintiffs and Defendants entered into a binding and enforceable contract, the Agreement.

72. Through various acts and omissions, as detailed herein, Defendants breached the Agreement.

73. As a direct and proximate result of Defendants' actions, Plaintiffs have been and will continue to suffer damages.

74. These damages were a foreseeable result of Defendants' improper actions.

## FOURTH CLAIM FOR RELIEF

### (Tortious Interference With Prospective Economic Advantage Against Defendants)

75. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

76. In reliance on the representations and promises of Defendants, Plaintiffs took steps to begin their own business.

77. Plaintiffs had a reasonable expectation that some, if not all of Defendants' business would come to Plaintiffs.

78. However, Defendants, in violation of their obligations, maliciously and unreasonably, took steps to interfere with Plaintiffs' expectations of future business relationships.

79. As a direct and proximate result of Defendants' actions, Plaintiffs have been and will continue to suffer damages.

80. These damages were a foreseeable result of Defendants' improper actions.

## FIFTH CLAIM FOR RELIEF

### (Tortious Interference with Contractual Relations Against Defendants)

81. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

82. In reliance on the representations and promises of Defendants, Plaintiffs took steps to begin their own business.

83. Plaintiffs had a reasonable expectation that some, if not all of Defendants' business would come to Plaintiffs.

84. Defendants were aware that Plaintiffs had entered into contracts with clients and vendors, and were going to continue to do so, as agreed.

85. However, Defendants, in violation of their obligations, maliciously and unreasonably, took steps to

interfere with Plaintiffs' contractual relations.

86. As a direct and proximate result of Defendants' actions, Plaintiffs have been and will continue to suffer damages.

87. These damages were a foreseeable result of Defendants' improper actions.

### SIXTH CLAIM FOR RELIEF

**(Unjust Enrichment Against Richards and Relic)**

88. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

89. Defendants received the benefit of Plaintiffs services and their compliance with the Agreement.

90. Defendants also received the benefit of loan funds, which were not repaid.

91. As a result, Defendants were unjustly enriched by receiving a benefit they had no right to receive.

92. Plaintiffs were harmed and are entitled to return of those benefits.

### SEVENTH CLAIM FOR RELIEF

**(Quantum Meruit Against Defendants)**

93. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

94. Plaintiffs have performed their obligations.

95. Defendants have refused to take action to make Plaintiffs whole.

96. To the extent any portion of the Agreement is determined to be unenforceable, despite it being valid and legal, Plaintiffs are still entitled to be compensated for their services.

## EIGHTH CLAIM FOR RELIEF

### (Injunctive Relief Against Defendants)

97. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

98. Defendants agreed to be bound by reasonable restrictive covenants, including non-compete, non-solicit and non-disparagement covenants.

99. Defendants further agreed that a breach of any of these covenants would cause irreparable harm for which there is no legal remedy.

100. Plaintiffs' rights and Defendants' obligations under the Agreement are clear and certain.

101. Defendants have violated those terms causing irreparable harm for which there is no remedy at law.

## NINTH CLAIM FOR RELIEF

### (Declaratory Judgment Against Defendants)

102. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

103. The New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, authorizes courts to declare rights, status, and other legal relations provided by a contract to afford litigants relief from uncertainty and insecurity.

104. Pursuant to the Declaratory Judgment Act, a declaratory judgment is appropriate where the judgment will terminate the controversy or remove uncertainty.

105. A true and actual dispute exists between the parties as to the interpretation and enforcement of the Agreement, as well as the parties' status and rights.

106. Accordingly, a declaratory judgment declaring the following is appropriate relief to be entered in this matter:

   (i) Defendants breached the Agreement and Plaintiffs' termination thereof was valid and enforceable;

   (ii) Defendants improperly communicated with clients, vendors and other third parties;

   (iii) Plaintiffs have not breached the Agreement;

   (iv) Defendants owe Plaintiffs sums certain that must be immediately repaid; and

   (v) Such other declarations that the Court deems just, equitable and appropriate.

### **TENTH CLAIM FOR RELIEF**

**(Breach of the Implied Covenant
of Good Faith and Fair Dealing Against Defendants)**

107. Plaintiffs repeat and restate each of the foregoing paragraphs as if set forth at length herein.

108. In every contract, there is an implied covenant of good faith and fair dealing.

109. The covenant of good faith and faith dealing, consistent with its literal meaning, requires parties to, among other thigs, not act to deprive other parties of the fruits of the bargain contained in the contract.

110. Further, the covenant of good faith and fair dealing requires parties to act without malice in the enforcement and exercise of rights under a contact.

111. As detailed herein, Defendants have deprived Plaintiffs of their rights and bargained for benefits under the Agreement.

112. As such, Defendants breached the covenant of good faith and fair dealing and damaged Plaintiffs.

### **ELEVENTH FORM OF RELIEF**

**(Promissory Estoppel Against Defendants)**

113. Plaintiffs repeat and restate each of the foregoing paragraphs as if set forth at length herein.

114. Defendants made material representations regarding, inter alia, their intent to cease operations and to allow Plaintiffs to transition clients and work.

115. Plaintiffs reasonably relied on those representations to their detriment, causing harm.

116. Defendants should now be estopped from taking action contrary to their various promises and representations.

### TWELFTH FORM OF RELIEF

### (Libel and Slander Against Richie)

117. Plaintiffs repeat and restate each of the foregoing paragraphs as if set forth at length herein.

118. Richie has made knowingly false statements purporting to be factual to third-parties, orally and in writing, that have caused harm to Richards' reputation, including but not limited to his owing clients' monies, his inability to perform services for clients, and statements regarding false accusations made during his prior employment.

119. These slanderous and libelous statements have caused direct and real harm to Richards and Mars Media.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs pray that judgment be entered in their favor, awarding damages sufficient to compensate them for the damages they suffered as a result of Defendants' wrongful conduct, including an amount sufficient to restore them to the

condition they would have enjoyed but for Defendants' conduct, including pre- and post-judgment interest, imposition of injunctive relief, including temporary and permanent injunctions barring and enjoining Defendants from further violating the Agreement and its covenants, and such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all of the triable issues in this complaint.

## DESIGNATION OF TRIAL COUNSEL

James DiGiulio, Esq. is hereby designated as trial counsel for the within matter.

                                  **O'TOOLE SCRIVO, LLC**

                                  */s/ James DiGiulio*
                                  James DiGiulio
                                  14 Village Park Road
                                  Cedar Grove, New Jersey 07009
                                  (973) 239-5700
                                  *Attorneys for Plaintiffs*

Dated: March 4, 2022